**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| MARIA LOPEZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 05-5227 (JAG) |
| v. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

**GREENAWAY, JR., U.S.D.J.**

## I.  INTRODUCTION

Plaintiff Maria Lopez seeks review of the Commissioner of Social Security

Administration's ("Commissioner") decision denying her application for Supplemental Security

Income ("SSI") benefits, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).[1]  Plaintiff argues that the

Commissioner's decision is not adequately supported by the evidence, and should be reversed or

remanded to the Commissioner for reconsideration.  For the reasons set forth in this Opinion,

this Court finds that the Commissioner's decision is supported by substantial evidence and

should be affirmed.

---

[1] These sections of the Social Security Act (hereinafter "Act") provide that any individual may obtain a review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing to which he or she was a party.  The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g).

## II. **PROCEDURAL HISTORY**

On November 26, 2002, Plaintiff filed an application for SSI benefits, pursuant to Sections 216(I), 223, and 1614(a)(3)(A) of the Act, codified as 42 U.S.C. §§ 416(I), 423, 1382c(a)(3)(A), respectively.  (Tr. 63.)[2]  Plaintiff's claim is based on her alleged disabilities of asthma, chronic lymph node hyperplasia, depression/concentration and/or nervous disorder ("depression/anxiety"), obesity and residual neck and back pain as independent impairments, or, in the aggregate.  (Pl.'s Br. at 9, 26.)  Following the Social Security Administration's denial of Plaintiff's application on September 26, 2003, Plaintiff filed a request for reconsideration on October 9, 2003.  (Tr. 35.)  The denial was affirmed on December 26, 2003.  (Tr. 36.)  Plaintiff requested a hearing on January 8, 2004 and appeared before Administrative Law Judge Joel H. Friedman ("ALJ") on February 16, 2005.  (Tr. 17.)  The ALJ issued a decision on March 25, 2005, finding that Plaintiff was not eligible for SSI benefits.  (Tr. 17.)  The ALJ found:

1.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.  The claimant's asthma is a "severe" impairment, based upon the requirements in the Regulations (20 C.F.R. § 416.920).

3.  This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No.4.

4.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.  The claimant retains the residual functional capacity for unlimited lifting and/or carrying and unlimited sitting, standing and/or

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g). "Tr." refers to said transcript.

walking in an eight-hour workday, with the need to avoid even moderate exposure to temperature extremes, fumes, dust, etc. and concentrated humidity and wetness.

6.   The claimant's past relevant work as a factory worker, a ticketer, and an embroidery machine operator did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 416.965).

7.   The claimant's medically determinable asthma does not prevent the claimant from performing her past relevant work as a factory worker, a ticketer, and an embroidery machine operator.

8.   The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (20 C.F.R. § 416.920(f)).

(Tr. 22-23.)  Based on these findings, the ALJ concluded that Plaintiff was not eligible for SSI

benefits under §§1602 and 1614(a)(3)(A) of the Act.  (Tr. 23.)  Plaintiff appealed the ALJ's

determination, and on August 29, 2005, Administrative Appeals Judge Mark E. Milett denied her

appeal.  (Tr. 6.)  Plaintiff then filed the instant action, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking reversal of the Commissioner's decision.

### III.  <u>STATEMENT OF THE FACTS</u>

A.   <u>Background</u>

Plaintiff was born on March 20, 1963, and stopped working on May 19, 2002 because of

her claimed disabilities.  (Tr. 63.)  She was born in the Dominican Republic, moved to the

United States in 1988, and to date has not been naturalized as a United States citizen.  (Tr. 264.)

She testified that she completed school up to the eighth grade in the Dominican Republic, and

though she can communicate in Spanish, she is not able to read or write in English.  (Id.)  She is

able to speak and understand some English, however.  (Tr. 18.)  Plaintiff has worked as a factory

worker/solderer, a ticketer, a cleaner, a packer, and an embroidery machine operator.  (Tr. 73,

265.)  Plaintiff testified that, though she has sought jobs independently and through agencies, her impairments as well as her inability to speak English have prevented her from finding any suitable gainful employment.  (Tr. 265-272.)  Additionally, she has reported that some of the companies which she worked for in the past are no longer conducting business.  (Id.)  Plaintiff testified that she is physically capable of performing all of her past jobs under reasonable working conditions, except for soldering, which produces chemical fumes that historically have required her to seek medical attention for exposure. (Id.)  Plaintiff also asserts that when she cleans, her asthma may become aggravated, and she suffers from shortness of breath.  (Id.)  Plaintiff testified that she currently works as a school lunch aide for ten hours a week at a salary of $350 per month.[3]  (Id.)

### B.    Claimed Disabilities

Plaintiff stopped working in May 2002, allegedly because of complications stemming from chronic asthma, neck problems, and depression/anxiety.  (Tr. 265-272.)  She testified that she frequently suffers from shortness of breath, and uses a nebulizer twice in the evenings.  (Tr. 273.)  Plaintiff alleges difficulty in lifting heavier objects, standing for long periods of time, and walking for long distances due to arthritis in her right foot, among other things.  (T. 279.)  Plaintiff also alleges pain resulting from a surgical scar on her neck.  (Tr. 277.)  The scar purportedly swells, persistently itches, and causes Plaintiff embarrassment.  (Id.)  Plaintiff also testified that she suffers from depression/anxiety (some of which stems from her physical ailments), which requires her to take psychotropic medication.  (Id.)

---

[3] The ALJ determined, and it is undisputed, that working as a school lunch aide at this income does not qualify as a "gainful activity level" for the purposes of the Act.  (Tr. 18).

C.      <u>**Medical Evidence Considered by the ALJ**</u>

The record indicates that Plaintiff has been evaluated by physicians and experts on several occasions.

1.      *Dr. Shukla's Ongoing Treatment*

Plaintiff began treatment with P. Shukla, M.D. in November 1992.  (Tr. 142.)  In a report dated January 17, 2003, Dr. Shukla indicated that he had previously diagnosed Plaintiff with obesity and asthma.  (Tr. 143.)

In a later report dated April 25, 2003, Dr. Shukla indicated that he had referred Plaintiff for Pulmonary Function Testing, but, to his knowledge, she had not followed up on his recommendation.  (Tr. 145.)  This dilatory conduct was consistent with Plaintiff's "history of non-compliance" with Dr. Shukla's orders and evaluations.  (<u>Id</u>.)  In a report dated July 8, 2003, Dr. Shukla discussed a March 27, 2003 visit by Plaintiff regarding her asthma.  (Tr. 146.)  Dr. Shukla labeled her condition "well controlled" at that time, given that she exhibited no wheezing.  (<u>Id</u>.)  He went on to state that Plaintiff never reported any cervical pain and was not in the care of any other physicians.  (Tr. 146, 147.)  He did mention that he had knowledge of Plaintiff's having had a "neck 'problem.'" (<u>Id</u>.)  He described the problem as a growth which had undergone a biopsy.  (<u>Id</u>.)  According to Dr. Shukla, the results of the biopsy testing indicated no malignancy, however.  (<u>Id</u>.)

Dr. Shukla also noted in his July 8, 2003 report that he had prescribed Xanax and Zoloft to Plaintiff in 2000, but, because the prescriptions seemed to alleviate her mental symptoms successfully, he did not renew them.[4]  (<u>Id</u>.)  Dr. Shukla characterized Plaintiff's emotional state

---

[4] In evaluating Plaintiff's mental health treatment, the state examined Plaintiff's claims of follow-up treatment at the Jersey City Mental Health Clinic.  (Tr. 175.)  The clinic denied having treated her.  (Tr. 162.)  As a result, Dr. Shukla's brief treatment in 2000 is the only verifiable care on record for Plaintiff's claimed mental impairment.

as "emotionally stable for a long time," and he indicated that she did not need any further

psychotropic mediation.  (Id.)  Dr. Shukla also reported that Plaintiff used the antihistamine

Cardec daily, as well as Proventil a couple of times a day, to control her residual asthma

symptoms, and that she felt the Proventil "'works very well.'"  (Id.)

2.     <em><strong>Hospitalization and Emergency Care On Record</strong></em>

The record indicates that Plaintiff received hospital and emergency room care several

times for different ailments in the years preceding her pending appeal.

On July 16, 2001, Surgeon Brian Trainor, D. O. performed an open biopsy of Plaintiff's

submental lymph node located on Plaintiff's neck in order to relieve symptoms described as

"painful lymphandenopathy" diagnosed from chronic lymph node hyperplasia.  (Tr. 130, 132.)

The surgery was performed at Bayonne Hospital and resulted in the removal of several small,

suspicious, football shaped nodes.  (Tr. 132, 133.)  Aside from "a multiple year history of

lymphandenopathy," Plaintiff was found to be otherwise healthy and was in stable condition

after the operation.  (Id.)  She was given a multi-layered 5.0 cm closure, and the hospital

reported no complications.  (Tr. 128.)  She was advised to keep her right neck dry, apply

bacitracin twice a day, sleep with her head elevated and take no aspirin products.  (Tr. 129.)  She

was further advised that she could return to work as tolerated on July 17, 2001, and that she

should schedule a follow-up visit with her doctor in one week.  (Id.)

On July 9, 2003, she was treated in the emergency room at Christ Hospital of Jersey City,

New Jersey, for what she described as "chest pain."  (Tr. 155.)  Her vital signs were within the

normal range.  (Tr. 158.)  She was listed as alert, and in mild, painful distress.  (Id.)  She was

oxygenated with 98% room air and found to have upper left pectoral chest wall tenderness.  (Id.)

She was listed as negative for rales, rhonchi, wheezes, and rub, and her breath sounded

6

bilaterally equal.  (Id.)  A radiographic examination of the chest indicated normal soft tissue

contours.  (Tr. 161.)  The rib structures showed normal bone mineralization and contour.  (Id.)

No deformities were evident. (Id.)  Her diaphragms had a normal convex appearance with sharp

costophrenic angles.  (Id.)  The trachea was midline, and her heart was within normal size

limitations.  (Id.)  The hilar and vascular structures were normal with normal peripheral

vascularity and aeration.  (Id.)  No infiltrates or fibrotic streaking was observed.  (Id.)  She was

medicated with Tylenol and codeine for pain, instructed to follow-up with a physician in 3-4

days, and subsequently released in stable condition.  (Tr. 159.)

On September 22, 2003, Plaintiff again was treated in the emergency room at Christ

Hospital of Jersey City, New Jersey, for what she described as "sore throat/vomiting."  (Tr. 226.)

Her vital signs were within the normal range.  (Tr. 228-229.)   She was listed as alert and in no

distress.  (Id.)  She was oxygenated with 9% room air and found to have a sore throat.  (Id.)  She

was listed as negative for rales, rhonchi, wheezes, and pleural rub, and her breath sounded

bilaterally equal.  (Id.)  She was also negative for various chest, heart and abdomen

abnormalities.  (Id.)  Plaintiff was medicated with Zithromax, instructed to follow-up with a

physician in 2 days, and subsequently released in stable condition. (Id.)

On December 1, 2004, Plaintiff was again treated in the emergency room at Christ

Hospital of Jersey City, New Jersey, for what she described as "shortness of breath since last

night."  (Tr. 194.)  Her vital signs were within the normal range.  (Tr. 203.)  She was listed as

alert, awake, comfortable, and in mild ear, nose and throat distress.  (Id.)  She was oxygenated

with 99% room air and found to be in the early stages of pneumonia.  (Tr. 194, 203.)  She was

listed as negative for rales, rhonchi, wheezes, and pleural rub, and her breath sounded equal

bilaterally.  (Tr. 203.)  She was also negative for various heart abnormalities, and for tenderness,

stiffness, or lymphandenopathy in the neck.  (Id.)  Plaintiff was stable during her treatment, and

she exhibited no evidence of acute cardiorespiratory decompensation.  (Tr. 204.)  She was

treated with aerosolized albutero/atrovent and prednisone, reporting significant relief.  (Id.)  On

re-examination, her shortness of breath symptoms had resolved, and no respiratory distress was

found.  (Id.)  Her lungs were functioning well with good air entry, and she was diagnosed and

treated for early pneumonia.  (Id.)  Plaintiff was medicated with Zithromax.  (Id.)  She was

deemed safe for discharge with no evidence of sepsis or cardiovascular instability.  (Id.)

Plaintiff was instructed to follow-up with her primary care doctor in 1-2 days for further

evaluation.  (Id.)

On April 23, 2004, Plaintiff was treated once more in the emergency room at Christ

Hospital of Jersey City, New Jersey, for what she described as "right side abdominal pain."  (Tr.

237.)  Her vital signs were within the normal range.  (Tr. 240-241.)  She was listed as alert,

awake, comfortable and in no distress.  (Id.)  She was oxygenated with 100% room air and found

to have constipation/abdominal pain.  (Id.)  She was listed as negative for rales, rhonchi,

wheezes, and pleural rub, and her breath sounded bilaterally equal.  (Id.)  She was also negative

for various chest, heart, and abdomen abnormalities, and the results of a urinalysis detected

nothing abnormal.  She was medicated with Colace and instructed to drink more water, increase

her fiber intake, and follow-up with a physician if the pain persisted.  (Id.)  She was

subsequently released in stable condition.  (Id.)

### 3. *State Agency Doctor's Review of Plaintiff/Medical Records*

An internal medicine consultative evaluation was performed on September 3, 2003 by

Francky Merlin, M.D.  (Tr. 167, 168.)  Plaintiff advised Dr. Merlin that she had eight emergency

department visits in the past year, and denied smoking, drinking, or illegal drug use.  (Id.)  On

physical examination, she was alert, conscious, oriented, and in no acute distress.  (Id.)   Her affect and behavior were appropriate.  (Id.)  A scar was noted on the right side of neck.  Jugular veins were nondistended and supple.  (Id.)  The trachea was midline, with no thyromegaly or carotid bruit.  (Id.)  There were no wheezes, rales or rhonchi of the lungs, and the heart was regular S1 and S2, with no murmur, gallop or friction rub.  (Id.)  A pulmonary function test was performed, which produced normal results.  (Id.)  Plaintiff exhibited no difficulties grasping and manipulating objects, and she reported no joint pain, swelling or warmth when performing these basic functions.  (Id.)  Dr. Merlin diagnosed Plaintiff with asthma, but indicated that the laboratory data showed normal pulmonary function.  (Tr. 169.)  He pointed out that she was able to sit, stand, walk, lift, carry, handle objects, hear, speak and travel, but that she should not be exposed to dust, fumes or extremes in temperature.  (Id.)

In a later report dated September 25, 2003, another doctor reviewed Plaintiff's medical record, and indicted that Plaintiff's symptoms were attributable to her asthma, and that the severity reported was disproportionate with the medical evidence.[5]  (Tr. 188.)  The evaluating doctor found that the evidence indicated a well-controlled impairment, in which Plaintiff registered an airflow within the range of normal.  (Id.)  Further, any alleged neck and back pain from her remote surgery was not corroborated by the historical record of her complaints, and her back and spine tested normal for flexibility.  (Id.)

Lastly, a state psychiatric expert[6] reviewed Plaintiff's record, noting in a September 23, 2003 report that Plaintiff had not followed up on her initial care by Dr. Shukla, currently took no psychiatric medications, had not sought any psychiatric treatment for three years, and was on

---

[5] Though the signature of the doctor reviewing the medical record is present in the record, his/her name cannot be discerned due to illegibility.  (Tr. 182.)
[6] Though the signature of the state psychiatric expert is present in the record, his/her name cannot be discerned due to illegibility.  (Tr. 176.)

record as stating that she had felt "'emotionally stable for a long time.'" (Tr. 176.)  Based on this information, the expert determined that, "no further assessment is warranted and no psy. rat[ing] is warranted."  (Id.)

### 4.   *Vocational Expert's Evaluation of Plaintiff's Residual Function*

Rocco J. Meola, an impartial vocational expert familiar with jobs existing nationally and in the region, offered his opinion regarding Plaintiff's residual function at the February 16, 2005 hearing.  (Tr. 283.)  Prior to testifying, Mr. Meola reviewed Plaintiff's vocational record and witnessed her testimony.  (Tr. 282.)  He began by testifying regarding the nature and physical requirements of Plaintiff's previous employment.  (Id.)  He described her factory work as sedentary and unskilled, her ticketing and lunch aide work as light and unskilled, and her embroidering work as light and semi-skilled.  (Tr. 285.)  Mr. Meola testified on questioning by the ALJ that if Plaintiff avoided "even moderate exposure to temperature extremes, fumes, dust. . . [a]nd had to avoid concentrated humidity and wetness," she would be able to perform any of her past relevant work "with the exception of the soldering."  (Id.)  He further testified that the region currently has about 2,000 jobs of this type available to the workforce, and that 50,000 such jobs exist nationally.  (Id.)

On cross examination, Mr. Meola was asked to assume that, for health reasons, Plaintiff was required to work under environmental limitations wherein she had "to avoid all dust and temperature changes and other particulates in the air.  And assume further that because of her anxiety and nervousness she would not be able to assure concentration throughout the day, and would have lapses in concentration for 15 minutes every two hours."  (Tr. 285-286.)  Under these circumstances, Mr Meola testified that the occupational base of jobs available to Plaintiff would be reduced "to nil."  (Id.)

# IV. <u>DISCUSSION</u>

## A.      <u>Standard of Review</u>

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

§ 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial

evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Stunkard v. Sec'y of Health and Human Services</u>,

841 F.2d 57, 59 (3d Cir. 1988); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co.</u>

<u>v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of

evidence but may be less than a preponderance."  <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357,

360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then

determine whether there is substantial evidence to support the Commissioner's decision.  <u>See</u>

<u>Taybron v. Harris</u>, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir.

1992), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Williams</u> <u>v</u>. <u>Shalala</u>, 507 U.S. 924 (1993) (citing <u>Early v. Heckler</u>,

743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial

evidence, this Court is bound by those findings, "even if [it] would have decided the factual

inquiry differently."  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 35 (3d Cir. 2001); <u>see</u> <u>also</u> <u>Hartranft v.</u>

<u>Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

11

subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; [and] (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.     Statutory Standards**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for SSI benefits, a claimant must first establish that she is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that she "is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

12

**C.    The Five-Step Evaluation Process And The Burden Of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one

through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the

claimant is currently engaged in substantial gainful activity.[6]  20 C.F.R. § 404.1520(b).  If a

claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability

claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a

severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it

"significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In

determining whether the claimant has a severe impairment, the age, education, and work

experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe

impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's

impairment(s) with the impairments presumed severe enough to preclude any gainful work,

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a

claimant's impairment meets or equals one of the listed impairments, she will be found disabled

under the Social Security Act.  If the claimant does not suffer from a listed impairment or its

equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the

---

[6] Substantial gainful activity is "work that involves doing significant and productive physical or
mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[7] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform her past relevant work, she will not be found disabled under the Act.  In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume her past work, and her condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

---

[7] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

demonstrate that there are other jobs existing in significant numbers in the national economy, which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guidelines direct a conclusion regarding whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.

15

The burden, however, still remains on Plaintiff to prove that the impairments in combination are severe enough to qualify her for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as its interpretation in Jones, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

## D.    ALJ Findings

The ALJ applied the five-step sequential evaluation described above, and determined that Plaintiff was not disabled within the meaning of the Act.  (Tr. 23.)  The ALJ found that Plaintiff satisfied the first step of the evaluation process, given that Plaintiff has not engaged in substantial gainful activity since the onset of her alleged disability in May 2002.  (Tr. 18.)

In step two of the evaluation, the ALJ found that Plaintiff has "asthma, an impediment which causes significant vocationally relevant limitations."  (Id.)  Plaintiff's alleged mental impairment, however, was not deemed severe because of Plaintiff's failure to seek any specialized psychiatric care[8] and Dr. Shukla's decision to forgo renewing her psychotropic medications after the success of the initial prescription of 2000.  (Tr. 21.)  The ALJ also found

---

[8] In his opinion, the ALJ did acknowledge Plaintiff's claim that she had "a history of treatment for mental problems."  (Tr. 21.)  However, "even her attorney of record conceded that attempts to obtain medical treatment records resulted in the response that she had not been treated and that there were no records available."  (Id.)

that Plaintiff's neck pain did not qualify as a severe impairment because, aside from some

itching, minor swelling, and self-consciousness about her surgical scar, Plaintiff was unable to

articulate any physical limitations brought on by her neck injury, which would have prevented

her from working.  (Id.)

Despite Plaintiff's asthma, which the ALJ characterized as "well-controlled," the ALJ

concluded that Plaintiff "retains the residual functional capacity [as codified under 20 C.F.R.

Part 416.967] for unlimited lifting and carrying, and sitting, standing and/or walking up to six

hours in an eight-hour workday, with the need to avoid even moderate exposure to temperature

extremes, fumes, dust, etc. and concentrated humidity and wetness."  (Tr. 21.)  The ALJ relied

on "the findings and opinions of the State Agency medical consultants. . . [to support] a finding

that the claimant is capable of this level of exertion."  (Tr. 22.)  He found that Plaintiff's

statements concerning "her impairments and their impact on her ability to work are not

persuasive in light of the reports of treating and examining practitioners."  (Tr. 21.)

The ALJ considered the severity of Plaintiff's claims of debilitating pain and other

subjective complaints, and concluded that they were not credible because they were not

adequately supported by the record.  (Id.)  The ALJ also held that Plaintiff's subjective

complaints were inconsistent with Social Security ruling 96-7p and 20 C.F.R. § 416.929.  (Tr.

19, 20.)  In evaluating the subjective complaints, the ALJ gave careful consideration to:

> (1) the nature, location, onset duration, frequency, radiation, and intensity of any
> pain; (2) precipitating and aggravating factors (e.g., movement, activity,
> environmental conditions); (3) type, dosage effectiveness, and adverse side-
> effects of any pain medications; (4) treatment, other than medication, for relief of
> pain; (5) functional restrictions; and (6) the claimant's daily activities.

(Id.)  In sum, the ALJ held that Plaintiff's subjective complaints failed to demonstrate the

17

existence of a qualifying severe impairment.  (Id.)

In step four, the ALJ found that Plaintiff has the residual functional capacity to perform her past relevant work as a factory worker, a ticketer, and an embroidery machine operator.  (Tr. 22.)  The demands of such occupations were described in Plaintiff's testimony at her hearing, and the ALJ compared her descriptions with the residual functional capacity she was found to possess by her treating physicians.  (Id.)  The ALJ also specifically cited the testimony of vocational expert Meola in confirming that the work involved in these occupations is largely sedentary, involves light exertion, and is either unskilled or semi-skilled in nature.  (Id.)  Given these facts and Plaintiff's residual functional capacity, the ALJ determined that she was "not under a 'disability' as defined in the Social Security Act," and denied her application for benefits.  (Id.)

**E.** **Analysis**

Plaintiff contends that the ALJ's decision should be reversed or remanded because "substantial evidence exists in the record to support a finding of disability."  (Pl.'s Br. at 1.) Plaintiff contends that: (1) "The ALJ refused to recite all of Plaintiff's severe impairments" (specifically neglecting Plaintiff's chronic lymph node hyperplasia and her obesity), thereby rendering "his decision [after step 2]. . . tainted"  (Id. at 10, 11); (2) "[t]he ALJ's pain evaluation failed to assess the considerations mandated" by the Commissioner, given that the ALJ allegedly did not give Plaintiff's complaints of neck pain and depression/anxiety serious consideration (Id. at 18, 21-22); (3) "[t]he ALJ's hypothetical questioning to the vocational expert, upon which the denial is based, is incomplete," in that the hypothetical relied upon for assuring that Plaintiff might resume past work dealt only with Plaintiff's asthmatic impediments and not any of her

other 'disabilities' (Id. at 26).

Plaintiff misstates this Court's standard of review in arguing that the ALJ's determination should be overturned based on *competing* substantial evidence suggesting she is disabled.  As this Court has explained, this Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if some contrary evidence is present in the record.  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Nowhere does Plaintiff contest that substantial evidence in the record justifies the ALJ's findings.  Nevertheless, one may read Plaintiff's complaint to allege that the substantial evidence relied upon by the ALJ was defective. This Court will therefore address Plaintiff's three arguments, described above, to determine if the ALJ's findings are deficient such that remand of this matter is warranted.

### 1.    *The ALJ Did Not Err by Not Reciting All of Plaintiff's Allegedly Severe Impairments*

Plaintiff claims that the ALJ erred because he failed to consider all of Plaintiff's alleged impairments.  Throughout the five-step evaluation process, the Commissioner is obligated to consider all of the alleged impairments individually and in combination.  42 U.S.C. § 423(d)(2)(B).  Plaintiff, however, bears the burden of demonstrating how her impairments, whether individually or in combination, amount to a qualifying disability in the first four steps of the analysis.  Burnett, 220 F.3d at 118; Williams, 87 Fed. Appx. at 243.  Moreover, even if Plaintiff can demonstrate that the ALJ did not consider her impairments in combination, the claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).

19

Plaintiff specifically contends that the ALJ did not adequately consider her neck condition in reaching his decision. The complaint states that "[i]n the instant case plaintiff's chronic lymph node hyperplasia, confirmed on surgical pathology, was not mentioned and not considered a severe impairment." (Pl.'s Br. at 17.)  Though he did not address it in terms of its scientific designation, the ALJ did acknowledge Plaintiff's neck problem:

> The record reflects that the claimant had an excision of a lymph node in her neck in July 2001 [citation omitted], which was benign.  She testified that she still has some swelling there, but other than feeling self-conscious about it, . . . and the fact that it itches, she does not describe any actual physical limitations resulting from it.  Therefore, I conclude that this condition is also non-severe within the meaning of the Social Security Act and Regulations.

(Tr. 21.)  Further, when questioned at the hearing about the occupational limitations stemming from her neck problem, the following dialogue took place between Plaintiff ("CLMT") and the ALJ:

> ALJ: You mentioned the thing on your neck.  Does that affect you in any way?
> CLMT: Yes.  I always - - I don't like to show it.  I always have to wear long neck shirts. . .
> ALJ: Okay.  Does it limit you in any other way though?
> CLMT: Yes, because it bothers me.  It itches.  And sometimes I feel like, you know, pulling it out.  I went to a doctor, and they charged [sic] me $1,500 to remove it.

(Tr. 277.)  Given that Plaintiff herself failed to identify any limitations resulting from her neck condition that would prevent her from working, the substantial evidence in the record gave the ALJ no basis from which he could conclude that her condition was "severe" for the purposes of a disability claim.

Plaintiff also asserts that the ALJ did not adequately consider her obesity in reaching his

decision.[9]  The complaint states that "[h]ere. . . at step two of the sequential evaluation. . . the

ALJ has removed plaintiff's [sic] obesity from the table of consideration." (Pl.'s Br. at 17.)  The

ALJ did note in his opinion, however, that Plaintiff "was seen only occasionally for a history of

obesity and asthma" by her primary physician, Dr. Shukla.  (Tr. 18.)  This statement indicates

that the ALJ did factor Plaintiff's obesity into his overall consideration of her disability claim.

Moreover, the burden remains on Plaintiff to establish that her obesity individually or in

combination with other impairments prevents her from working.  The proposition that Plaintiff's

obesity constituted a disabling condition is unsupported by her testimony at the February 16,

2005 hearing where, on examination by the ALJ and Abraham Alter, her attorney ("ATTY"), she

failed to mention her obesity as a limiting factor in obtaining employment:

> ALJ: What sort of things can't you do?
> CLMT: I can do some jobs like packaging products or feed [sic] the sewing
> machine with the thread. . .
> ATTY: So are we correct that the reason you're not working is because you
> haven't found a job, and not because of your medical problems?
> CLMT: Sometimes when I do some cleaning jobs I get shortness of breath and I
> get asthma. . .

(Tr. 265-266.)  Plaintiff failed to identify any occupational limitation resulting from her obesity

and even admitted that she was able to perform the duties of her past employment.  Plaintiff

failed to aver or proffer any evidence that her obesity is a "severe" impairment on its face that

---

[9] Plaintiff cites the following in support of her position that obesity is a consideration the ALJ
must weigh in his analysis:

> We will consider obesity in determining whether the individual has a medically
> determinable impairment, the individual's impairment is severe, the individual's
> impairment meets or equals the requirements of a Listed [sic] impairment, the
> individual's impairment prevents him or her from doing past relevant work and
> other work that exists in significant numbers in the national economy (Social
> Security Ruling 00-3P) (2000 WL 628049, 2(S.S.A.)).

(Pl.'s Br. at 9.)

prevents her from working.  The ALJ's consideration of Plaintiff's obesity was not deficient as a result.  There is no evidence in the record supporting Plaintiff's contention that her obese condition qualifies as a disability.

Finally, although the ALJ did not specifically state that he considered Plaintiff's impairments in combination, a careful reading of his opinion indicates that he did analyze the combined effects of all of Plaintiff's impairments that are reflected in the record.  In analyzing the record, the ALJ is not obligated to employ particular "magic words," or adhere to a particular format in explaining his decision.  Sassone, 2006 WL 15182 at *4 (citing Jones, 364 F.3d at 505).  In memorializing his decision, the ALJ must ensure "that there is sufficient development of the record and explanation of findings to permit meaningful review."  Jones, 364 F.3d at 505. Furthermore, the ALJ's opinion need "not have a specific section dedicated to the assessment of the [combined] impact of" Plaintiff's impairments.  Bryan v. Barnhart, No. 04-191, 2005 U.S. Dist. Lexis 1493 at *3 (E.D. Pa. Feb. 2, 2005).

In light of these standards, the ALJ's opinion demonstrates that he considered Plaintiff's obesity and neck injury adequately, in combination with her other impairments, assessing their combined severity and their impact on Plaintiff's ability to perform past relevant work. The fact that the ALJ does not specifically note that he is considering Plaintiff's impairments in combination does not render his decision unsupported by substantial evidence.  See Bryan, 2005 U.S. Dist. Lexis 1493 at *4 ("[b]y analyzing and discussing the severity of each of Plaintiff's impairments, [the] ALJ . . . evidenced that she was reviewing the impact of the combination of Plaintiff's impairments").  The ALJ satisfied his duties in noting Plaintiff's occasional treatment for obesity and her neck injury in combination with his finding that the evidence brought

forward in the reports, records and testimony of Plaintiff, and the various experts retained by the state, persuasively demonstrate that the Plaintiff's past work does "not require the performance of work activities precluded by her medically determinable impairments."  (Tr. 18, 22.)

The ALJ's step-by-step analysis of each alleged disability demonstrates that he considered their effect alone and in combination on the Plaintiff's ability to function in the workplace.  The ALJ considered various medical diagnoses by physicians and engaged in an analysis of what was required on the job given Plaintiff's previous employment.  (Tr. 21-22.) More specifically, he considered how the limitations would affect Plaintiff's "capacity for unlimited lifting and carrying, and sitting, standing and/or walking up to six hours in an eight hour workday, with the need to avoid even moderate exposure to temperature extremes, fumes, dust, etc. and concentrated humidity and wetness." (Id.)  The ALJ's opinion demonstrates that he gave due consideration to all of Plaintiff's alleged impairments.  Thus, his decision will not be disturbed on the ground that he failed to consider all of Plaintiff's alleged disabilities.

**2.    *The ALJ's Pain Evaluation Did Not Fail to Assess the Mandated Considerations***

Plaintiff claims that the ALJ failed to analyze properly her subjective complaints of neck pain and depression/anxiety.  (Pl.'s Br. at 22.)  In assessing whether the claimant is disabled, the ALJ must give consideration to the claimant's subjective complaints of pain.  10 C.F.R. §§ 404.1529, 416.929; Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir. 1986).  Subjective complaints alone, however, will not establish that a claimant is disabled.  Dorf, 794 F.2d at 901.  Although "assertions of pain must be given serious consideration," Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), Plaintiff still "bears the burden of demonstrating that her subjective complaints

were substantiated by medical evidence." <u>Alexander v. Shalala</u>, 927 F. Supp. 785, 795 (D.N.J. 1995), <u>aff'd</u>, 85 F.3d 611 (3d Cir. 1996).  Accordingly, subjective claims of pain and impairment "will not alone establish . . . [disability]; there must be medical signs and laboratory findings . . . [demonstrating] medical impairments, which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a).  The <u>Alexander</u> court further noted that "even [in] situations where a subjective complaint of pain coincides with a known impairment, it is within the discretion of an ALJ to discount that claim if there is a rational basis to do so." <u>Alexander</u>, 927 F. Supp. at 795.

Even if this Court accepts Plaintiff's own subjective account of the extent of her pain, the record does not support that any such pain has acted as an occupational limitation.  Assuming, *arguendo*, that Plaintiff suffers from the swelling, itching, and feelings of self consciousness described in her testimony, such impediments have not prevented Plaintiff from working at any of her past occupations.  Plaintiff's testimony reveals that she does believe she is capable of working, but cannot find employment largely because she does not speak English and because her past employers are no longer doing business.  (Tr. 265.)  Further, nothing in the medical record indicates that Plaintiff is physically limited by her neck pain.

If the "weight of the medical evidence clearly undermines [Plaintiff's] subjective complaints," then the ALJ's "rejection of . . . subjective complaints" will not be disturbed. <u>Maloney v. Massanari</u>, 38 Fed. Appx. 820, 821 (3d Cir. 2002).  In <u>Maloney</u>, "the doctor[s] failed to find any evidence of mental impairment which would preclude [Plaintiff] from performing simple work activities."  <u>Id.</u>  Additionally in that case, there was "sufficient evidence to determine that [Plaintiff] was able to perform a limited range of . . . work" based on the analysis

and the testimony of a vocational expert.  Id.

Maloney is analogous to the case at bar in both instances, and the court there refused to disturb the ALJ's findings that the Plaintiff was not disabled despite her professed subjective pain.  The ALJ in this case, therefore, acted rationally and within his discretion in determining that even accepting Plaintiff's subjective complaints, nothing in the record indicates that her pain amounts to a disability.

Plaintiff's subjective account of her mental impediments, however, must be analyzed differently given that her assessment differs significantly from the assessments given by others in the record.  According to Plaintiff, she continued to suffer from severe depression/anxiety that was continuously treated with a regular prescription of psychotropic medication.  (Pl.'s Br. at 22.)  She further claimed that until recently she was under the ongoing care of a psychiatrist named "Cecile" at the Puerto Rican Family Institute of Jersey City, New Jersey.  (Tr. 275, 276.)  The Institute, however, denies having any record of Plaintiff's purported visits (Tr. 276).  The record further indicates that Dr. Shukla prescribed Xanax and Zoloft to treat Plaintiff's depression only once in 2000 and did not renew the prescription due to an improvement in Plaintiff's condition.  (Tr. 145.)  No other evidence is offered to corroborate Plaintiff's account of either her condition or her treatment.

Plaintiff's uncorroborated account of her alleged mental impairments fails to satisfy Alexander's requirement that the record support a claimant's subjective contentions.  See Alexander, 927 F. Supp. at 795.  The ALJ, therefore, was well within his discretion in determining that Plaintiff's alleged mental impairment did not constitute a disability.  The ALJ's conclusion that Plaintiff's subjective complaints lack credibility is supported by substantial

evidence and will not be disturbed.

> **3.**     *The ALJ Did Not Err in Posing The Hypothetical to the Vocational Expert*

Non-exertional restrictions must be considered in determining if an impairment, or combination thereof, is sufficiently disabling to warrant Social Security relief.  Caruso v. Comm'r of Soc. Sec., 99 Fed. Appx. 376 (3d Cir. 2004).  The ALJ must rely on additional vocational evidence beyond his own expertise in order to formulate an opinion as to whether a non-exertional restriction qualifies as a disability.  Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000).[10] In posing a hypothetical to a vocational expert in order to gather additional vocational evidence as to whether a claimant can work despite an alleged disability, the hypothetical question must reflect all of the claimant's impairments which are supported by the record.  Chrupcala v. Heckler, 829 F.2d 1269 (3d Cir. 1987).

Within this framework, Plaintiff contends that the ALJ erred when he asked vocational expert Meola to determine Plaintiff's work potential, considering only her asthmatic symptoms in the record.  As explained, the ALJ's hypothetical did not factor in either the neck pain or the mental impediments subjectively reported by Plaintiff.  If "[t]he hypothetical question that the ALJ posed did not reflect the fact of constant and severe pain which appellant testified to and which. . . was supported by objective medical findings in the record," the ALJ could not rely on Mr. Meola's answers as substantial evidence.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

---

[10] "[T]he Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion)." Sykes, 228 F.3d at 261.

In this case, however, as this Court has explained, the record fails to support Plaintiff's claims of severe pain and mental impairments. The ALJ's hypothetical was, therefore, an appropriate inquiry based on the record. Despite Plaintiff's current protest, Mr. Meola's response to the hypothetical is significant evidence the ALJ properly relied upon in formulating his opinion.

Mr. Meola's opinion constitutes evidence that substantially supports that the ALJ's conclusion that Plaintiff was capable of performing work and was able to return to any of her previous jobs, with the exception of her work as a solderer. (Tr. 22, 23.) This Court therefore affirms ALJ's conclusion that Plaintiff was not disabled as defined by the Social Security Act because Plaintiff retained the residual functional capacity to perform her past relevant work.[11]

### V. <u>CONCLUSION</u>

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


Dated: December 6 , 2006

      ____s/ Joseph A. Greenaway, Jr._____
      JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[11] It was not necessary for the ALJ to proceed to step five of the sequential analysis to determine whether there are other jobs existing in the national economy that would be suitable for a person in Plaintiff's condition.